FRED HAAS and another *vs.* IDA L. SACKETT and others.

January 18, 1889.

**Negotiable Instrument — Conversion of Note — Incomplete Indorsement.**—Defendants, the payees and holders of a promissory note, desiring to raise money on it, wrote their names on the back of it, and applied to plaintiffs to discount it. Upon their request defendants left the note with them for the sole purpose of giving them an opportunity of ascertaining as to the solvency of the makers. Subsequently the plaintiffs refused either to discount the note, or to return it to defendants. Thereupon defendants brought suit against them to recover the value of the note thus wrongfully withheld, in which they obtained judgment, which plaintiffs paid. *Held,* that defendants were not liable as indorsers; that payment of the judgment invested plaintiffs with title to the converted property as of the date of the conversion, which was merely the obligation of the makers of the note, without any contract of indorsement by defendants,— no such contract ever having been consummated.

Appeal by plaintiffs from an order of the district court for Hennepin county, *Hicks,* J., presiding, overruling their demurrer to the separate answer of Benjamin H. Billings and others, the indorsers of the note described in the opinion.

*John H. Randall* and *A. J. Shores,* for appellants.

*Stocker & Matchan,* for respondents.

MITCHELL, J. The defendants were sued as indorsers of a promissory note, which it was alleged they indorsed and sold to plaintiffs. The defendants answered that, wishing to raise money on the note by getting it discounted, they wrote their names on the back of it, and then applied to the plaintiffs to discount it; that, at plaintiffs' request, they left the note with them for a day, for the sole purpose of affording them an opportunity to ascertain the solvency of the makers; that defendants subsequently demanded a return of the note, which plaintiffs wrongfully refused; that thereupon they brought an action against the plaintiffs for the value of the note thus wrongfully taken and held, in which they obtained judgment for such value, which the plaintiffs subsequently paid. From an order overruling their demurrer to this answer plaintiffs appeal.

The line of argument by which plaintiffs seek to hold the defendants liable is, in brief, as follows:' Payment of the judgment invested them with title to the property converted, of which they are to be deemed the purchasers, their title relating back to the date of the conversion; that, as defendants indorsed the note with a view of selling it as indorsed paper, if they had sold it in that form they would have been liable as indorsers; that by bringing their action for damages, they elected to sell it, and the plaintiffs were compelled to become purchasers of it; that what defendants thus elected to sell, and the plaintiffs were compelled to purchase by payment of the judgment, was the property in the form in which it was converted, to wit, the note of the makers indorsed by defendants. This argument is certainly ingenious, but, as seems to us, unsound. The payment of the judgment neither created any new property, nor added any new force to the note, or to anything written upon it, but merely vested in the plaintiffs title to the converted property as it existed at the date of the conversion. All that plaintiffs converted, and hence all they acquired title to by payment of the judgment, was the note of the makers. True, it had the names of the defendants upon the back of it, but this did not constitute a contract of indorsement, for no such contract had ever been made. The fallacy in plaintiffs' argument consists in assuming that what they converted was the note of the makers, with defendants' contract of indorsement upon it. Literally, the word indorsement means merely to write on the back; but technically, as applied to a note, it means a contract to pay on certain conditions. In this case no such contract was ever consummated. Had defendants brought an action of claim and delivery, all they would have recovered would have been the note of the makers, or its alternative value. In the action for conversion, all they could recover was the value of the paper as the obligation of the makers, and hence that is all that the plaintiffs acquired title to by payment of the judgment. Suppose, instead of a note, the property had been a horse, which defendants had offered to sell with a warranty, and the plaintiffs had obtained possession merely for the purposes of trial, and had subsequently refused to buy or to return the property, and defendant had brought an action for damages for

the wrongful conversion, could there be any doubt that the measure of damages would be the actual value of the horse, and not what it would have been if according to the proposed warranty? Or would any one claim that after payment of the judgment in such a case the plaintiffs could maintain an action on the proposed warranty? Clearly not, for the simple reason that the contract of warranty, like that of indorsement in this case, was never in fact entered into or consummated. The cases where the execution and delivery of a promissory note were procured by fraud are not analogous. There a contract has in fact been entered into, although voidable on account of the fraud. By electing to sue for damages instead of rescinding, the maker elects to let the note stand as his contract. In the present case no contract whatever was ever made.

Order affirmed.